IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH COHEN, | ) | CASE NO. 1:12 CV 1351 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Keith Cohen, for disability insurance benefits and supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Cohen had severe impairments consisting of fibromyalgia, status post bicep muscle injury, and obesity.[1] The ALJ made the following finding regarding Cohen's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift no more than 20 pounds occasionally and 10 pounds frequently; can stand/walk for approximately 6-hours in an 8-hour workday; can sit for approximately 6-hours in an 8-hour workday. He should never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs or ladders under 10 rungs or under 8-feet.

---

[1] Transcript ("Tr.") at 23.

He can frequently balance, stoop, crouch, kneel, and occasionally crawl. The claimant should avoid all use of moving/hazardous machinery and unprotected heights.[2]

Based on that residual functional capacity, the ALJ found Cohen capable of his past relevant work as electrical designer[3] and, therefore, not under a disability.[4]

Cohen asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Cohen presents three issues for review:

- In finding Cohen capable of light work with additional, nonexertional limitations; the ALJ gave opinions of the treating physician, Todd Solomon, M.D., little and limited weight. As reasons for this discounted weight, the ALJ stated lack of clinical support. Does substantial evidence support the weight assigned to the treating physician's opinions and the reasons given for that weight?

- The ALJ found Cohen's allegations of limitations not credible as largely inconsistent with clinical findings on physical examination. Given Cohen's severe impairment of fibromyalgia, did the ALJ err in discounting Cohen's allegations based upon clinical findings?

- The ALJ gave great weight to the opinion of Nick Albert, M.D., a state agency reviewing physician. Dr. Albert opined that Cohen's allegations are not supported by objective medical evidence and that physical examination does not warrant any RFC limitations. Given Cohen's severe impairment of fibromyalgia, did the ALJ commit error in giving Dr. Albert's opinion great weight in that it relies almost exclusively upon objective medical findings?

---

[2] *Id.* at 26.

[3] *Id.* at 29.

[4] *Id.* at 29-31.

-2-

For the reasons explained below, the Commissioner's finding of no disability does not have the support of substantial evidence. I recommend the remand of the case for reconsideration of the finding as to residual functional capacity, with proper evaluation of the opinions of the treating physician and of Cohen's credibility.

## Analysis

### 1.    Standard of review

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[5]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner

---

[5] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

-3-

survives "a directed verdict" and wins.[6]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[7]

I will review the findings of the ALJ at issue here consistent with that deferential standard.  The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**2.      The ALJ's treatment of Dr. Solomon's opinions**

Cohen's challenge to the ALJ's decision in this fibromyalgia case centers on the ALJ's analysis of the opinions of Dr. Solomon, Cohen's primary care physician. Dr. Solomon provided several opinions. In December of 2007, pre-onset, Dr. Solomon provided a teledictation report. In that report he relates Cohen's history of "chronic fibromyalgia" and listed the medications.[8] He noted that on examination Cohen had some tenderness in the trapezius muscles but was otherwise neurologically normal.[9] He confirmed the diagnosis of fibromyalgia but said that, as to disability, he would defer to a rheumatologist.[10] He declined to complete a formal residual functional capacity evaluation.[11]

---

[6] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[7] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[8] Tr. at 342.

[9] *Id.*

[10] *Id.* at 343.

[11] *Id.* at 352-55.

-4-

In September of 2010, Dr. Solomon issued a formal residual functional capacity evaluation.[12] He gave as the cause for all limitations fibromyalgia.[13] This is a detailed report with extensive handwritten assessment notations. He limited Cohen to lifting and carrying 30 pounds, 15 pounds occasionally, and 5 to 10 pounds frequently.[14] In Dr. Solomon's opinion, Cohen could stand or walk a total of one hour in an eight-hour day, a half hour to an hour without interruption.[15] He could sit for two hours without interruption in an eight-hour day.[16] The handwritten notes indicate that these one-hour and two-hour limitations for a complete workday may more accurately be interpreted as the need for a sit/stand option at will.[17] As for postural limitations, according to Dr. Solomon, Cohen could never climb and balance, stoop, crouch, kneel, or crawl, about one-fifth of the day (occasionally).[18] Reaching, handling, and pushing and pulling have been affected to the extent that Cohen cannot engage in continuous movement of his upper extremities.[19]

---

[12] *Id.* at 375-77.

[13] *Id.*

[14] *Id.* at 375.

[15] *Id.* at 376.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at 377.

Dr. Solomon gives a thorough handwritten summary of the sustainability problems caused by Cohen's fibromyalgia.[20] He acknowledges that there are no objective medical findings but references to 18 out of 18 tender points as a basis for the fibromyalgia diagnosis.[21] My review of the treatment notes indicates no extensive tender point analysis by Dr. Solomon, and it appears that he is relying upon a 2001 tender point analysis done by a rheumatologist (discussed later). Dr. Solomon addresses Cohen's unsuccessful efforts to diminish his pain through exercise.[22] The ALJ afforded this opinion, "little weight" because it is, "without clinical support from actual treatment records."[23]

Dr. Solomon issued another report in January of 2011. This opinion is relatively short and centers upon the unsuccessful effort to address Cohen's fibromyalgia pain with prescription medication. Dr. Solomon concludes, "[d]espite maximization of medical therapy, his symptoms have prohibited him from working any kind of reasonable work schedule."[24] The ALJ assigned this opinion "limited weight" as inconsistent with a conservative treatment history. The ALJ observed, "[a]gain, clinical findings on repeated examination do not support Dr. Solomon's RFC."[25]

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 28.

[24] *Id.* at 379.

[25] *Id.* at 28.

Cohen was seen by a rheumatologist, William S. Wilke, M.D., at Cleveland Clinic Main Campus. In a letter to a referring doctor, Dr. James Silverblatt, dated November 1, 2001, Dr. Wilke relates that he saw Cohen in 1995, and at the time he had symptoms of fibromyalgia.[26] There are no records of treatment by Dr. Wilke between 1995 and 2001. Dr. Wilke conducted a physical examination that disclosed tenderness at all 18 tender points used for fibromyalgia diagnosis.[27] This appears to be the tender point analysis referred to by Dr. Solomon in his 2010 evaluation. In a second letter to Dr. Silverblatt, dated November 29, 2001, Dr. Wilke reviewed laboratory testing and found the results consistent with the diagnosis of fibromyalgia.[28] He agreed with the then current medication regimen.[29]

Dr. Solomon referred Cohen to another rheumatologist, Mark Schulte, M.D., at University Hospitals.[30] Dr. Schulte conducted a physical examination and noticed tenderness to palpitation at the second and third PIP joints on the left hand. Dr. Schulte concluded that Cohen's history and physical exam were consistent with possible fibromyalgia but that undifferentiated connective tissue disease could not be ruled out.[31] He recommended further

---

[26] *Id.* at 373.

[27] *Id.*

[28] *Id.* at 374.

[29] *Id.*

[30] *Id.* at 311-12.

[31] *Id.*

testing and a follow up in one to two months.[32] The transcript contains no record of any follow up, however.

Dr. Solomon referred Cohen to Dr. Wilke again in September of 2008. Dr. Wilke interviewed and examined Cohen, noted normal laboratory test results, and reviewed his medications.[33] He recommended some changes in the medication regimen and aerobic exercise 30 minutes three times a week.[34] His diagnosis remained fibromyalgia.[35] His letter to Dr. Solomon made no reference to limitations. Although the ALJ discusses Dr. Wilke's examination and diagnosis, the ALJ makes no assignment of weight. Nevertheless, because Dr. Wilke's treatment was on referral from Dr. Solomon, and Dr. Wilke reported his findings to Dr. Solomon, Dr. Wilke's diagnosis and examination findings should be considered along with those of Dr. Solomon.

The law of the Sixth Circuit on the analysis of fibromyalgia is extensively set out in *Rogers v. Commissioner of Social Security*.[36] This case follows closely on the analytical framework that I laid out in *Swain v. Commissioner of Social Security*.[37] In both *Rogers* and *Swain*, the ALJs rejected the opinions of treating rheumatologists who had established the

---

[32] *Id.*

[33] *Id.* at 271.

[34] *Id.*

[35] *Id.*

[36] *Rogers*, 486 F.3d at 243-46.

[37] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990-94 (N.D. Ohio 2003).

severity of fibromyalgia by tender point analyses and who had offered specific opinions regarding the limitations caused by that severity. In both cases, the ALJs rejected the opinions of the treating rheumatologists because those opinions did not have the support of objective medical evidence. As observed in *Rogers* and *Swain*, because of the nature of fibromyalgia, its diagnosis and the determination of the limitations caused thereby cannot be determined from objective medical evidence.[38] If a treating rheumatologist has conducted proper analysis, his opinion should ordinarily be afforded controlling or great weight.[39]

After *Swain*, the Commissioner expressed concern that *Swain*'s analytical framework opened the door to a disability finding in any fibromyalgia case. In a subsequent decision, *Dalzell v. Commissioner of Social Security*,[40] I made clear that the proof needed to pass a certain threshold before the opinion of a treating physician would be entitled to controlling or substantial weight. The gold standard for these thresholds are the specialty of the treating physician (preferably a rheumatologist) and findings from tender point analysis.[41]

The threshold referred to above is not a bright line. These cases must be viewed on a continuum. On one end of the continuum are those cases involving primary care physicians, not rheumatologists, who diagnose fibromyalgia and do no tender point analysis. On the

---

[38] *Rogers*, 486 F.3d at 243-44; *Swain*, 297 F. Supp. 2d at 990.

[39] *Rogers*, 486 F.3d at 244-45; *Swain*, 297 F. Supp. 2d at 993.

[40] *Dalzell v. Comm'r of Soc. Sec.*, Case No. 1:06cv557, at 4-5, 7 (N.D. Ohio Jan. 8, 2007).

[41] *Ormiston v. Comm'r of Soc. Sec.*, Case No.  4:11 CV 2116, at *5 (N.D. Ohio Dec. 13, 2012) .

other end of the continuum are those cases such as *Rogers* and *Swain* where a treating rheumatologist performs proper tender point analysis and gives an opinion imposing specific limitations caused by the fibromyalgia.

This case falls somewhere in between those poles on the continuum. Although Dr. Solomon is a primary care physician, he referred Cohen to two different rheumatologists, Drs. Wilke and Schulte, and had the benefit of their confirmed diagnoses of fibromyalgia and examination findings. Dr. Solomon had the treating relationship with Cohen and the longitudinal perspective on his impairments and limitations as a basis for his opinions. As such, his opinions meet the threshold that triggers the application of the treating physician rule. The ALJ had the responsibility to follow the analytical framework for *Rogers* in evaluating Dr. Solomon's opinions. Under the framework, the ALJ improperly placed substantial if not complete reliance upon clinical findings.[42]

---

[42] Tr. at 28. The ALJ makes a reference to "conservative treatment history." *Id.* He does not elaborate on what that means. Cohen's physicians prescribed a number of drugs to address his pain (*e.g.*, *id.* at 261-62), only some of which are discussed in the ALJ's decision (*id.* at 27). Dr. Solomon, the treating physician, reported in January of 2011 that, "[w]e have attempted over the years to adjust his [Cohen's] medications to alleviate his fibromyalgia and chronic fatigue with only marginal success, in part due to side effects derived from pharmacological treatment *and partly due to the limited efficacy of available treatment options for his condition*." *Id.* at 379 (emphasis added).

-10-

Even though the Commissioner on review offers "a host of plausible reasons"[43] why the ALJ properly discounted Dr. Solomon's opinions, this Court must rely on "the actual analysis in the ALJ's opinion"[44] and reject *post hoc* arguments or justifications.[45]

As in *Rogers*,[46] because the ALJ failed to provide sufficient justification for the weight assigned to Dr. Solomon's opinions, the decision lacks the support of substantial evidence and should be remanded.

### 3.    The ALJ's treatment of Dr. Albert's opinion

The transcript contains a short case analysis from Nick Albert, M.D., a state agency reviewing physician.[47] This is not a full residual functional capacity evaluation as normally done by state agency reviewing physicians. Rather, as counsel for the Commissioner conceded at oral argument, this is a short form summary of Dr. Albert's review of the medical records. Dr. Albert concludes that the physical examination does not warrant any RFC limitations.[48] His cryptic notes concentrate solely on objective medical findings.[49]

---

[43] *Salsgiver v. Comm'r of Soc. Sec.*, No. 1:11CV351, 2012 WL 2344095, at *12 (N.D. Ohio June 20, 2012).

[44] *Hawk v. Astrue*, 4:11 CV 196, 2012 WL 3044291, at *6 (N.D. Ohio July 25, 2012).

[45] *Hawk*, 2012 WL 3044291, at *6; *Salsgiver*, 2012 WL 2344095, at *12.

[46] *Rogers*, 486 F.3d at 246.

[47] Tr. at 371.

[48] *Id.*

[49] *Id.*

-11-

Nevertheless, even though the ALJ acknowledged fibromyalgia a severe impairment, he assigned Dr. Albert's opinion great weight.[50]

The ALJ erred in assigning Dr. Albert's opinion great weight for several reasons. First, Dr. Albert based his opinion on the absence of objective medical evidence, despite identifying fibromyalgia as the relevant impairment.[51] This runs contrary to the holding of the Sixth Circuit in *Rogers*.[52] Second, the ALJ must not give greater weight to a non-examining physician over that of an examining physician unless the non-examining physician clearly states why he differs with the examining physician.[53] Dr. Albert did not address Dr. Solomon's opinions.[54] Dr. Albert's opinion predates Dr. Solomon's opinions of 2010 and 2011.[55]

On remand, the ALJ must not assign Dr. Albert's report "great weight" or rely on it discounting Dr. Solomon's opinions.

---

[50] *Id.* at 29.

[51] *Id.* at 371.

[52] *Salsgiver*, 2012 WL 2344095, at *10.

[53] *Lyons v. Soc. Sec. Admin.*, 19 F. App'x 294, 302 (6th Cir. 2011).

[54] Tr. at 371.

[55] Compare Tr. at 371 (Dr. Albert's "Case Analysis" of Oct. 29, 2009) with *id.* at 375-77 (Dr. Solomon's "Medical Assessment of Ability to Do Work-Related Activities" of Sept. 4, 2010) and *id.* at 379 (Dr. Solomon's letter of Jan. 24, 2011).

4.      **The ALJ's credibility findings**

The ALJ found Cohen's statements about the intensity, persistence, and limiting effects of his symptoms "not credible to the extent they are largely inconsistent with the clinical findings of record on repeated physical examination."[56] As I observed in *Swain*, in fibromyalgia cases the ALJ "must go beyond objective medical evidence in properly" evaluating credibility.[57] On remand, the ALJ should reconsider the credibility finding.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Cohen had no disability. Accordingly, I recommend the reversal of the decision of the Commissioner denying Cohen's applications for disability insurance benefits and supplemental security income and the remand of the ALJ's findings as to the weight assigned to the opinion of the treating physician and Cohen's credibility.

Dated: June 20, 2013                                s/ William H. Baughman, Jr.
                                                            United States Magistrate Judge

---

[56] Tr. at 27.

[57] *Swain*, 297 F. Supp. 2d at 994. Also *Rogers*, 486 F.3d at 248.

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[58]

---

[58] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).